RECEIVED
AUG 31 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| ROBERT THEODILE | CIVIL ACTION NO.: 03-1844 |
| VERSUS | JUDGE DOHERTY |
| DELMAR SYSTEMS, INC., ET AL | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is a Motion for New Trial on Damages, or Alternatively, for Remittitur [Doc. 124-1], filed on behalf of defendant, Delmar Systems, Inc. (hereinafter "Delmar"). Plaintiff opposes the motion. [Doc. 126-1]. Briefing has now been completed, and the motion has been taken under advisement.

**I.     Background**

Plaintiff, Robert Theodile, brought suit against defendants, Delmar Systems, Inc. and Alpha Marine Services, L.L.C. ("Alpha Marine"), for injuries he alleges he sustained while working as a rigger aboard Alpha Marine's vessel, the M/V GARY CHOUEST. Specifically, plaintiff filed claims for Jones Act negligence and maintenance and cure against Delmar, and a claim of unseaworthiness against Alpha Marine. Plaintiff's claim for maintenance and cure was severed and tried to the bench, following a jury trial on plaintiff's claims for Jones Act negligence and unseaworthiness. After an eight day trial, the jury rendered its verdict, finding Delmar liable under the Jones Act and finding Alpha Marine's vessel, the M/V GARY CHOUEST, to be seaworthy. The jury found plaintiff to be 30% contributorily negligent.

The jury awarded plaintiff a total of $2,148,000 in compensatory damages, itemized as follows[1]:

| | |
|---|---:|
| Past medical expenses | $ 24,000 |
| Future medical expenses | $ 126,000 |
| Lost income to date | $ 124,000 |
| Future loss of income and earning capacity | $ 624,000 |
| Pain and suffering, past and future | $ 750,000 |
| Mental anguish, past and future | $ 500,000 |
| **Total** | $2,148,000 |

On March 20, 2007, the Court entered a judgment for plaintiff on all claims (Jones Act, unseaworthiness and maintenance and cure). [Doc. 123] The judgment, which was jointly submitted by the parties and approved as to form (per the court's instruction - see Doc. 120), reads in pertinent part as follows:

> This action came on for trial before a jury for damages against Delmar Systems, Inc. under the Jones Act, and against Alpha Marine Services, L.L.C. under the general maritime law for unseaworthiness, and the issues having been duly tried and the jury having rendered its verdict on February 7, 2007,
>
> IT IS ORDERED AND ADJUDGED that in accord with the jury's verdict, Robert Theodile recover damages under the Jones Act from the defendant, Delmar Systems, Inc., in the amount of One Million Five Hundred Three Thousand Six Hundred dollars and no/100ths ($1,503,600.00) [reduced from jury's award of $2,148,000 to account for plaintiff's contributory negligence], with interest thereon at the rate provided by law, and plaintiff's costs of this action;
>
> IT IS FURTHER ORDERED AND ADJUDGED that in accord with the jury's verdict, Robert Theodile recover no damages under the general maritime law for unseaworthiness against Alpha Marine Services, L.L.C.;
>
> This action also came on for trial before the court against Delmar System, Inc. for maintenance and cure, and the issues being duly tried and the Honorable Rebecca F. Doherty, United States District Judge, having rendered her verdict on March 12, 2007;

---

[1] The jury awarded amounts identical to the amounts plaintiff's counsel suggested were appropriate for each category of damages at closing arguments.

IT IS FURTHER ORDERED AND ADJUDGED that in accord with the court's verdict, Robert Theodile recover past maintenance from Delmar Systems, Inc. in the amount of Twenty Four Thousand Five Hundred dollars and no/100ths ($24,500.00) with interest thereon at the rate provided by law and plaintiff's costs of this action, with future maintenance owed by Delmar Systems, Inc. at the rate of Twenty dollars and no/100ths ($20.00) per day until he reaches maximum medical improvement, and recover past cure from Delmar Systems, Inc. in the amount of Seven Thousand Five Hundred Ninety Four dollars and 75/100ths ($7,594.75) with interest thereon at the rate provided by law and plaintiff's costs of this action, that Delmar Systems, Inc. receive a credit against future cure in the amount of Eighty Eight Thousand Two Hundred dollars and no/100ths ($88,200.00), and that Robert Theodile recover no amount in compensatory damages or attorney fees for failure to pay maintenance and cure.

Delmar has now filed this "Motion for New Trial on Damages, or Alternatively, for Remittitur," arguing: (1) the award of $1,250,000 in general damages ($750,000 for past and future pain and suffering; $500,000 for past and future mental anguish) is excessive, and (2) the award of $624,000 in future wages is excessive. [Doc. 124].

## II.  Law

Under Federal Rule of Civil Procedure 59(a), a motion for a new trial in a jury case may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." The decision to grant or deny a motion for new trial is within the sound discretion of the trial court and is not subject to review on appeal, other than for an abuse of discretion. Young v. City of New Orleans, 751 F.2d 794, 798 (5th Cir. 1985). Moreover, "there is no abuse of discretion denying a motion for new trial unless there is a complete absence of evidence to support the verdict." Vogler v. Blackmore, 325 F.3d 150, 154 (5th Cir. 2003) (quoting Esposito v. Davis, 47 F.3d 164, 167 (5th Cir. 1995)). Although Rule 59(a) does not specify the grounds upon which a court may grant a new trial, Fifth Circuit jurisprudence has identified the following: the verdict is against the great weight of the evidence; the damages awarded are excessive or inadequate; the trial was unfair; or prejudicial error was

committed during the course of the trial. Smith v. Transworld Drilling Co., 773 F.2d 610, 613 (5th Cir. 1985).[2] Defendant's motion is argued solely on the basis of "excessiveness."

The trial court's discretion to grant a new trial "includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 433 (1996). The Fifth Circuit has further specified "...when a jury verdict results from passion or prejudice, a new trial is the proper remedy. When a damage award is merely excessive or so large as to appear contrary to right reason, remittitur is the appropriate remedy." Laxton v. Gap Inc., 333 F.3d 572, 586 (5th Cir. 2003) (citing Brunnemann v. Terra Int'l., Inc., 975 F.2d 175, 178 (5th Cir. 1992)). As previously stated, in this matter defendant does not argue, and the Court does not find, the jury verdict was the result of "passion or prejudice."

When analyzing whether a remittitur is appropriate, this Court notes (as did Judge Barbier in Campbell v. England, 2005 WL 1400465 (E.D.La.), *rev'd on other grounds*, 2007 WL 1454542 (5th Cir.) (per curiam)), the Fifth Circuit has endorsed two seemingly contradictory methods for evaluating the propriety of a jury award: (1) the "maximum recovery rule," and (2) (using J. Barbier's terminology) "the clearly excessive rule." Id at *2. Under the "maximum recovery rule," when the jury's award is excessive, the court should reduce the verdict "to the maximum amount the jury could properly have awarded." Dixon v. International Harvester Co., 754 F.2d 573, 590 (5th Cir. 1985). The maximum amount is determined by comparing the award

---

[2] As noted by other courts, great deference is afforded to jury findings, and courts should disturb the jury's award only when it "shock[s] the judicial conscience," is the result of "bias, passion, prejudice, corruption, or other improper motive," is "contrary to right reason," or is "entirely disproportionate to the injury sustained." Wood v. Diamond M Drilling Co., 691 F.2d 1165, 1168 (5th Cir. 1982); Eiland v. Westinghouse Elec. Corp., 58 F.3d 176, 183 (5th Cir. 1995); Coburn v. Browning Arms Co., 565 F.Supp. 742, 750 (W.D.La. 1983).

under scrutiny to awards in other cases for similar injuries. *See e.g.* Salinas v. O'Neill, 286 F.3d 827, 830 (5th Cir. 2002) ("A mainstay of the excessiveness determination is comparison to awards for similar injuries.") (citing Dixon at 589); Thomas v. Texas Dept. of Criminal Justice, 297 F.3d 361, 369 (5th Cir. 2002). "This comparison is limited to cases in the 'relevant jurisdiction.'" Salinas at 830 (citing Douglass v. Delta Air Lines, Inc., 897 F.2d 1336, 1339 (5th Cir. 1990) ("...we compare damages awarded in factually similar cases, *and arising within the controlling jurisdiction*, in order to construct an objective framework for comparison.") (emphasis added)). *See also* Vogler v. Blackmore, 352 F.3d 150 (5th Cir. 2003).[3] In certain cases, a multiplier is then applied to arrive at the maximum recovery amount. *See e.g.* Salinas at 831[4]; Thomas at 369. The district court then suggests plaintiff accept the remitted amount. If plaintiff declines, he is entitled to a new trial on damages alone. *See e.g.* Dixon at 590 and citations therein.

---

[3] While not all lower courts have adhered to the limitation requiring courts to look only at damages in cases from the relevant jurisdiction, this Court's review of the Fifth Circuit jurisprudence using "the maximum recovery rule" approach reveals the Fifth Circuit does seem to follow this limiting principle. (See e.g. Cheramie v. Blake Workover & Drilling Co., infra.)

[4] The Salinas court specifically states:

> In a further exercise of caution, to avoid substituting our opinion for that of the jury, we often have applied a multiplier, or percentage enhancement, to past similar awards. We would not, however, apply a multiplier where such a calculation was a part of the award. Such a calculation could lead to explosive growth in damage awards resulting merely from the happenstance of there being several factually similar cases with similar damages decided in close temporal proximity.

Salinas at 831 (additionally pointing out that cases in the Fifth Circuit have varied between a 50% multiplier and a 33% multiplier. All cases applying a 50% multiplier involved jury trials, whereas those applying a 33% multiplier are split. The court ultimately chooses a 50% multiplier pursuant to the Fifth Circuit's "rule of orderliness," as the 50% multiplier predates 33%.) Whether trial courts are at liberty to apply a "multiplier" is unclear from the jurisprudence.

Under the "clearly excessive rule," *the appellate* courts (at least at the appellate level) "do not determine excessiveness of damage awards by comparing verdicts in similar cases, but rather we review each case on its own facts." Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1356 (5th Cir. 1988); Hale v. Fish, 899 F.2d 390, 403 (5th Cir. 1990). *See also* Thomas v. Texas Dept. of Criminal Justice, 297 F.3d 361, 374 n.5 (Dennis, J., concurring in result, but disagreeing with the majority's review of excessiveness of the award by comparison to prior cases and citing Fifth Circuit cases in support of his argument).

However, when one examines the historical development underlying both approaches, it seems these diverging theories on the approach to remittitur are a relatively recent development. The Salinas line of cases ("maximum recovery rule") concludes "a mainstay of the excessiveness determination is comparison to awards for similar injuries," relying on Dixon for this proposition. However, Dixon merely states "...prior awards *may* be of *some* aid when the present award is shown to be greatly disproportionate to past awards for similar injuries." Id. at 589 (emphasis added) (citing Haley v. Pan American World Airways, 746 F.2d 311, 318 (5th Cir. 1984)). Haley, relied on by the Dixon court, states:

> We recognize...that an examination of such prior awards is of limited use in assessing the particular damages suffered by these particular claimants under these particular circumstances. However, ... prior awards may be of some aid in determining excessiveness when the present award is shown to be greatly disproportionate to past awards...for...similar injuries." Id. at 589 (internal citations and quotations omitted).

This Court agrees with Judge Barbier, who concluded in Campbell, "Thus, the leap from stating that comparisons are of limited use but may be of some aid, to concluding that they are the 'mainstay of the excessiveness determination' is simply not supported by the precedents cited for that rule." Campbell at n.1 (citing Thomas, 297 F.3d at 375 (Dennis, J., concurring)).

Conversely, the Johnson line of cases ("clearly excessive rule") relies on Hernandez v. M/V Rajaan, 841 F.2d 582, 587 (5th Cir. 1988). Hernandez involved a matter tried to the bench. In analyzing whether the trial court's award of damages should be remitted, the Hernandez court stated: "A verdict will be considered excessive only if it is greater than the maximum amount the trier of fact could properly have awarded. An *appellate court* may not determine excessiveness by comparing verdicts in similar cases, but rather must review each case on its own facts." Id. at 587 (citations omitted) (emphasis added). Hernandez in turn relied upon Winbourne v. Eastern Airlines, Inc., 758 F.2d 1016, 1018 (5th Cir. 1984) (citations omitted), which merely states: "We cannot judge the justification of damages by *mere* comparison with the awards upheld or reversed in other cases. Each case presents its own facts. But it is *helpful* to compare the Winbourne and Caldera cases."[5]

Given the murky guidance found in the more recent jurisprudence, this Court suggests the proper approach to remittitur heralds from the original line of thought. Indeed, it seems when the jurisprudence is traced back to its origins, the approach began as a combination of today's two divergent methods, but has, in subsequent years, been separated into two distinct methods of analysis. Therefore, this Court will evaluate this matter as follows: the case will be reviewed on its specific facts (viewing the medical testimony in the light most favorable to plaintiff), but an analysis of similar cases, brought in the relevant jurisdiction (the Fifth Circuit), shall provide a frame of reference to aid the Court in its determination of whether the damages

---

[5] *See also* Fruit Industries, Inc. v. Petty, 268 F.2d 391, 395 (5th Cir. 1959) ("...comparison of verdicts rendered in different cases is not a satisfactory method for determining excessiveness *vel non* in a particular case and that each case must be determined on its own facts.")

awarded in this matter (under its specific facts) are excessive *as a matter of law*.[6]

### III. Analysis

#### A. General Damage Award of $1,250,000

In support of its position an award of $1,250,000 in general damages is excessive, defendant brings attention to several cases involving general damages awarded for spinal-injuries. Unfortunately, all but two of the cited cases are between ten and nineteen years old. Additionally, the cited cases do not involve injuries as extensive as those at issue in the present case.

Defendant begins its examination with <u>Cheramie v. Blake Workover & Drilling Co.</u>, 1996 WL 409223 (E.D. La.)(Clement, J.), an unpublished district court opinion which does not reflect appeal to the Fifth Circuit, in which the court ordered a new trial on damages, unless plaintiff agreed to accept a remitted award of $300,000 for "pain and suffering and physical disability," rather than the $775,000 awarded by the jury.[7] According to the court:

> The medical testimony...,viewed in the light most favorable to plaintiff, established that plaintiff had suffered a back injury and *may* be required to undergo surgery. If not operated on, he would likely suffer chronic pain. If he did undergo surgery, it would take him approximately one year to recover. It was not certain whether or not he would have a good result, but, if he did, he could go back to work after one year and lift up to 50 pounds. There was also evidence that he suffered a few episodes of urinary incontinence, a symptom that might continue if he did not receive surgery. There was testimony that he suffered from

---

[6] Plaintiff's opposition memorandum primarily relies upon Louisiana appellate court decisions and a few Louisiana Supreme Court decisions. However, the relevant jurisdiction in this matter is the Fifth Circuit, as the damages in dispute were awarded pursuant to the Jones Act, a federal law. Although state courts have concurrent jurisdiction to hear Jones Act claims, this court finds the relevant jurisdiction for a claim brought pursuant to federal law in the United States District Court for the Western District of Louisiana is the Fifth Circuit. However, as there are no cases involving the same set of injuries in the Fifth Circuit, the Court will not dismiss as irrelevant the state appellate decisions cited by plaintiff, although the state courts, also, do no offer cases encompassing the same set of injuries.

[7] The opinion does not identify the claims involved, although a review of the record indicates the suit involved a maritime personal injury.

-8-

depression after his accident and was in need of psychological counseling. Id. at *3.

The Court, after analyzing both Louisiana state and federal court general damage awards for back injuries, found a high end range of $400,000 to $450,000, and a low end range of $75,000 to $150,000. Ultimately, the court concluded:

> Given these precedents, the Court cannot allow the $775,000 award for pain and suffering to stand. Because Mr. Cheramie has not had surgery during the two years since his accident, it is not apparent whether he will have a good result or whether he will continue to suffer lifelong pain. The physician most favorable to him opined that, with a good result, he would be able to return to work, lifting up to fifty pounds, within one year of the surgery, but that there was a chance he would not have a good result. There was also evidence of depression and emotional suffering. Individualizing the range of damages awarded in the cases previously discussed to the facts presented in this case, including the conflicting medical testimony, the Court finds that any award greater than $300,000 for general damages would be excessive. Id. at *4.

In this matter, the medical testimony (viewed in the light most favorable to plaintiff), establishes plaintiff did sustain injury to his back, spine and head. Surgery at two levels was recommended. If not operated on, plaintiff likely will suffer chronic pain. Specific evidence was not presented as to plaintiff's limitations (if any) post surgery. Like Cheramie, it is unknown whether plaintiff will have a good result, and if so, what his limitations will be. Also similar to Cheramie, plaintiff in the present case has not had surgery on his back, here, in the five years since his accident. Also like Cheramie, at the trial of this matter there was evidence of depression and emotional suffering, but in this matter, with conflicting evidence as to the source and nature. The medical testimony in this matter, as in Cheramie, was highly contested. Finally, similar to Cheramie, plaintiff suffered a few, isolated, instances of bowel incontinence, however there was conflicting testimony as to the cause.

However, as plaintiff points out, the Cheramie decision is over ten years old, unreported and arguably distinguishable, because it does not contemplate a multiple-level disc injury or a

brain injury. This Court also notes the jury interrogatories in Cheramie addressed only "Pain and suffering and physical disability" for general damages. Id. at *1. There was no separate and additional interrogatory for "Mental anguish, past and future," as in the matter before this Court.[8]

Defendant cites other cases again, involving back injuries, in support of its argument the general award in this matter is excessive.[9] Several of the cases are rather old, and none involve a brain injury.[10] Finally, defendant cites two cases to "demonstrate the excessiveness of the $1,250,000 general damage award in this case": Johnson v. Offshore Express, Inc., 845 F.2d 1347 (5th Cir. 1988) (bench trial - $370,000 awarded for "past and future mental pain and

---

[8] The jury instructions in this matter included awards for "pain and suffering, past and future" and "mental anguish, past and future;" the Court followed the Fifth Circuit Pattern Jury Instructions, Civil (2006) § 4.8, which states in pertinent part:

> In your deliberations, you should consider the following elements of damages, to the extent you find that the plaintiff has established such damages by a preponderance of the evidence: physical pain and suffering including physical disability, impairment, and inconvenience, and the effect of the plaintiff's injuries and inconvenience on the normal pursuits and pleasures of life; mental anguish and feelings of economic insecurity caused by disability... .

[9] Marcel v. Placid Oil Co., 11 F.3d 563 (5th Cir. 1994) (jury trial - $67,500 awarded for past and future "pain, suffering, mental anguish and disability" where plaintiff had laminectomy and discectomy after slip and fall on offshore platform); Averett v. Diamond Offshore Drilling Services, Inc., 980 F.Supp. 855 (E.D.La. 1997) (bench trial - $95,000 for past pain and suffering and $80,000 future pain and suffering for anterior discectomy and fusion of L3/4, depression, some sexual dysfunction); Nettles v. Ensco Marine Co., 980 F.Supp. 848 (E.D.La. 1997) (bench trial - $80,000 past/$70,000 future "mental and physical pain and suffering" for micro lumbar discectomy at L5-S1); Broussard v. Stolt Offshore, Inc., 2007 WL 101041 (E.D. La.) (bench trial - "general damages" of $400,000 for three-level lumbar fusion, sexual dysfunction, severe disability, and necessity of future surgery, resulting from work accident which caused "aggravation and activation of the pre-existing asymptomic [sic] spondylolisthesis"); Williams v. Chevron U.S.A., Inc., 875 F.2d 501 (5th Cir. 1989) (jury trial - Louisiana law - following a review of both federal and state cases, Fifth Circuit offers a remittitur to $200,000 of a jury award of $400,000, consisting of $200,00 for "Physical Pain and Suffering" and $200,000 for "Mental Anguish and Anxiety" for plaintiff with two herniated discs in his lower neck but had not had surgery at time of trial); Jauch v. Nautical Services, Inc., 470 F.3d 207 (5th Cir. 2006) (bench trial - $250,000 general damage award for lumbar disc fusion surgery);

[10] In fact, defendant's only mention of the evidence of plaintiff having sustained a possible "brain injury" in its motion is a brief reference to the conflicting medical testimony with regard to the "validity, severity and cause of the diagnosis." [Doc. 124-2].

suffering" resulting from one back surgery and a second surgery to address complications arising from first surgery) and <u>Hernandez v. M/V Rajaan</u>, 841 F.2d 582 (5th Cir. 1988) (bench trial - $1,000,000 awarded for "pain and suffering" to longshoreman rendered paralyzed from chest down when 110 pound bag of rice fell upon him; several surgeries and future surgeries necessary).

In his opposition memorandum, plaintiff argues defendant's argument:

> ...relies on cases involving one, or at best, two levels of disc injury in only the lumbar area of the spine. Whereas in our case at bar, the plaintiff has suffered multiple injuries consisting of herniations at six disc levels, an anterolisthesis or slipped vertebra at one disc level, and an organic brain injury. [Doc. 126, pp.11-12][11]

Thus, it seems plaintiff argues the amount of pain, suffering and mental anguish, in monetary damages, plaintiff has and will endure is greater than the amounts in those cases cited by defendant because plaintiff argues his injuries were more extensive. Plaintiff thereafter, cites several *Louisiana* appellate court cases dealing with "multiple level disc injuries to both the cervical and lumbar spine" in an attempt to establish an appropriate range of general damages of $550,000 to $1,750,000. [Doc. 126, pp.16-17] Finally, plaintiff cites several *Louisiana* appellate court cases, attempting to establish a range of damages for his closed head injury of $450,000 to $900,000. [Doc. 126, pp.15-16]

In the instant matter, plaintiff has not had surgery in the five years since his accident, and the result of any future surgeries with respect to plaintiff's pain, suffering and mental anguish is unknown.[12] Furthermore, there was testimony at trial that plaintiff's fecal incontinence, sexual

---

[11] This Court notes surgery was recommended at two levels.

[12] While the result of any future surgeries is unknown, the Court would point out that even without having had surgery, plaintiff has been intermittently able to carry out certain day to day activities and other more strenuous physical activities, as evidenced by the surveillance video shown at trial and

dysfunction, and depression could be caused by involvement from his back injury or the pain medication prescribed to plaintiff as a result of the back injuries, and thus a successful surgery might remove those factors. There was no testimony at trial that plaintiff would be permanently disabled or suffer paralysis of any nature following his back surgeries. At best and in the light most favorable to plaintiff, the evidence showed plaintiff is in need of surgery, and that surgery would be beneficial to his condition. Additionally, though there was testimony from plaintiff's expert that plaintiff sustained an organic brain injury which his expert opined, resulted in a reduced intelligence quotient ("I.Q."), there was no testimony or indication the reduction or injury has rendered plaintiff non-functioning. Furthermore, there was no testimony that in and of itself, the brain injury would prevent plaintiff from future employment or normal day-to-day functioning. In sum, this case, although clearly encompassing injury, does not fall within the "genre" of cases where general damages alone, of over $1,000,000 are awarded - i.e. permanent disfigurement, permanent paralysis, severe brain injury such that one is rendered wholly unable to function in day-to-day life, etc.[13] As stated by the Fifth Circuit in Simeon v. T. Smith & Son, Inc., 852 F.2d 1421, 1427 (5th Cir. 1988) (internal quotations and citations omitted): "While pain and suffering [and mental anguish] is, to a large degree, not susceptible to monetary quantification, and the jury thus necessarily has especially broad leeway, nevertheless, the sky is

---

testimony of plaintiff and his wife.

[13]The cases cited by both plaintiff and defendant awarding general damages in this range involve injuries far more severe than plaintiff in this matter. *See e.g.* Hernandez v. M/V RAJAAN, 841 F.2d 582 (5th Cir. 1988) ($1 million awarded in general damages to plaintiff who was permanently paralyzed from the chest down, underwent several surgeries, multiple future surgeries necessary); Cooper v. Lacorte, 775 So.2d 704 (La.App. 4th Cir. 2001) (general damage award of $1.6 million reduced to $1.2 million where plaintiff underwent surgeries for a cervical fusion and a two level caged lumbar fusion and suffers post-concussion syndrome); Joseph v. Entergy, 811 So.2d 54 (La.App. 4th Cir. 2002) (general damage award of $1,750,000 upheld where plaintiff underwent several back surgeries, had permanent back and head injuries which would require lifetime medical care, and suffered permanent sexual dysfunction).

simply not the limit."

The Court finds none of the cases cited (or reviewed by the Court during its independent research) involve a sufficiently similar set of injuries as to grant the Court the requisite "high end" and "low end" benchmark to determine the "maximum amount," such that the Court can/or should apply a multiplier as suggested by certain jurisprudence.

Consequently, given this Court's review of the facts of this case as noted above, viewed in the light most favorable to plaintiff, and being guided by a review of those cases available, this Court finds the $1.25 million awarded for general damages alone, is excessive, and as such, that award cannot stand. The Court further finds any award greater than $600,000 for general damages would be excessive. Due to the foregoing, plaintiff may either: (1) opt for a new trial limited to the issue of damages, or (2) accept a remittitur (reduction) of $650,000, resulting in an award of $600,000 for pain, suffering and mental anguish.[14]

### B. Future Wage Award of $624,000

Defendant also, argues the future wage award of $624,000 is excessive.[15] In support, defendant first argues the award does not comport with Culver v. Slater Boat Co., 722 F.2d 114 (5th Cir. 1983) ("Culver II"), stating:

> Plaintiff's economist, Lamar Jones, utilized a 1.36% 'estimated' [sic] or extrapolated his own below market or real discount rate based on short-term U.S. Treasury notes, rather than using U.S. Treasury Inflation Indexed Bonds which are issued by the United States Government, and which by their very design provide for an inflation-indexed real rate of return which directly equates to a

---

[14] Obviously, the remitted award pertains **only** to the subject of defendant's motion, i.e., pain, suffering and mental anguish. Plaintiff's award of medical expenses (past and future) and lost income (past and future) in the amount of $898,000 is not disturbed, nor is plaintiff's award for past maintenance and cure in the amount of $48,500 and future maintenance and cure until plaintiff reaches maximum medical improvement.

[15] The jury award of $624,000 was specifically for "future loss of income and earning capacity." See p. 2.

'below-market' discount rate as provided in the *Culver II* decision. [Doc. 124-2, p.7]

Defendant ultimately concludes the testimony of its expert was more accurate than plaintiff's expert, because it relied upon U.S. Treasury Inflation Indexed Bonds rather than U.S. Treasury notes, and points out its expert's testimony that "based on U.S. Treasury Inflation Indexed Bonds, **2.13%** is the lowest present value discount available utilizing the 'below market discount rate' mandated by *Culver II*." [Doc. 124-2, p.8 (emphasis in original)] Defendant cites no legal authority for its position, other than its economist's testimonial interpretation of Culver II.

Culver II held "in the absence of a stipulation by the parties concerning the method to be used, fact finders shall determine and apply *an appropriate* below-market discount rate as the sole method to adjust loss-of-future-earnings awards to present value to account for the effect of inflation." Culver, 722 F.2d at 117 (emphasis added). Culver II did not establish a specific methodology to be used in calculating below-market discount rate; rather, the court encouraged the parties to stipulate to a figure, with the caveat: "If they are unable to do so, they may introduce expert opinion concerning the appropriate rates." Id. at 122.[16]

---

[16] The Culver II decision addresses the U.S. Supreme Court's concern "that courts must not allow the adjustment for inflation to convert '[t]he average accident trial . . . into a graduate seminar on economic forecasting.'" Id. (quoting Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523 (1983)).

Culver II states:

In judge-tried cases, a trial court adopting a pre-tax discount rate between one and three percent will not be reversed if it explains the reasons for its choice. ... In jury trials, the jury should be instructed in the usual fashion concerning the weight to be given expert opinion evidence. The jury may then be permitted to return a single-figure award for damages or it may be required to answer interrogatories stating, among other items, the amount of loss of future earnings for each year for which it makes an award, and the discount rate it chooses to apply. The court will then be able to compute the total award or to require the parties to complete the arithmetic. Id. at p.122.

At the trial of this matter, both parties called economist expert witnesses to testify, with each supporting their respective positions on the appropriate, below-market discount rate. The jury, after weighing the testimony of both experts, chose to render a verdict consistent with Dr. Jones' 1.36% below-market discount rate. Defendant has provided the Court with no authority upon which it would upset the jury's award of $624,000 for future lost wages, based on plaintiff's expert's opinion that 1.36% is an appropriate discount rate.

Defendant's second argument is the award for future lost wages is excessive, because "Dr. Jones failed to account for Mr. Theodile's race and education level when determining his work life expectancy." [Doc. 124-2, p.8] At trial, plaintiff's economist calculated 25.4 years as plaintiff's work life expectancy, whereas defendant's economist calculated 19.63 years. It would seem the jury believed 25.4 to be the more appropriate figure, as the jury awarded the amount of future income suggested by plaintiff (and his economist) as the appropriate amount at closing arguments. Thus, defendant is asking this Court to find its economist more credible than plaintiff's, upset the jury's award, and adopt the work-life expectancy proposed by the defense expert.

---

The court later states:

> Courts are not prophets and juries are not seers. In making awards to compensate injured plaintiffs or the dependents of deceased workers for loss of future earnings, however, these fact-finders must attempt, in some degree, to gauge future events. Absolute certainty is by the very nature of the effort impossible. It is also impossible to take into account every bit of potentially relevant evidence concerning the tomorrows of a lifetime. The approach we adopt attempts to assure plaintiffs a fair measure of damages, to give defendants a reasonable adjustment for reducing future losses to present value, and to avoid making trials even more complex and their results even more uncertain. It is the product of a balancing of competing values. Ultimately, however, that is the root of all justice. Id. at 123.

Defendant's economist calculated plaintiff's work life expectancy using tables from the 1986 U.S. Department of Labor's Bureau of Labor Statistics. Plaintiff's economist calculated work life expectancy using tables based on the same tables as defense expert, but modified in the Journal of Forensic Economics in 2001, 2002. Plaintiff's expert testified the modified tables excluded race as a factor, in order to make the table more accurate. He further testified he used the modified tables because the original tables were issued by the Department of Labor in 1986, and since that time there has been "considerable controversy about whether it [the original Department of Labor tables] understated the labor force participation of African-Americans." [Doc. 124-2, Ex. A, p. 16] Defendant contends the exclusion of race and educational factors results in an inaccurate work-life expectancy in this case.

Work-life expectancy is a finding of fact. The jury weighed the evidence provided by both experts and awarded an amount in conformity with the testimony of plaintiff's expert. Defendant has provided no authority convincing this Court it should reverse the jury's award. Based on the speculative nature of work life expectancy estimates, reasonable minds could differ on which expert to believe. As such, this Court sees no compelling reason to reverse the jury's damage award of $624,000 for "future loss of income and earning capacity."

## CONCLUSION

Due to the foregoing, the Motion for New Trial on Damages, or Alternatively, for Remittitur [Doc. 124-1] filed by the defendant is **GRANTED IN PART AND DENIED IN PART**. With regard to the general damage award of $1,250,000 for pain, suffering and mental anguish, defendant's motion is **GRANTED**, and plaintiff may either: (1) opt for a new trial limited to the issue of damages, or (2) accept a remittitur (reduction) of $650,000, resulting in an award of $600,000 for pain, suffering and mental anguish (with all other amounts awarded for

damages other than pain, suffering and mental anguish remaining intact). With regard to the award of $624,000 for future wages, defendant's motion is **DENIED**.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 31 day of August, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE